INTERNATIONAL GRAPHITE & ELECTRODE CORP. *v.* UNITED STATES
(No. 4203) [1]

---

[1] In a report of the United States Tariff Commission made to Congress on reciprocity and commercial treaties, published in 1919 (Government Printing Office), it is stated, in substance (p. 391), that the "immediate and unconditional" provision had appeared in only three treaties to which the United States had been a party and it appears these had been abrogated long prior to the date of the publication.

[2] C. A. D. 58.

United States Court of Customs and Patent Appeals, May 29, 1939

*Barnes, Richardson & Colburn* (*Albert MacC. Barnes* and *Joseph Schwartz* of counsel) for appellant.

*Webster J. Oliver*, Assistant Attorney General (*Daniel I. Auster*, special attorney, of counsel), for the United States.

[Oral argument April 11, 1939, by Mr. Schwartz and Mr. Auster

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal involving the question of remission of additional duties assessed by reason of the undervaluation of imported merchandise.

Between June 14 and October 6, 1930, certain graphite electrodes and nipples of various sizes were imported by appellant into the United States and entered at Niagara Falls, N. Y., on the cost of production basis of $0.088 per pound. They were appraised upon the basis of foreign value at $0.20792 per pound in the case of most of the entries involved and at $0.14998 per pound in several of them.

The importer appealed for reappraisement, which appeal was heard before a single reappraising judge who, after having had one hearing, reopened the case and heard additional testimony as to the existence of a United States value. He held that there was no foreign or export value shown and that the proper dutiable value was the United States value. He found United States values for all of the various sizes in question, except as to a few sizes where he affirmed the appraised values because of lack of evidence of United States value.

Appeal was then taken by the Government and the importer (the latter appeal being abandoned) to the United States Customs Court, Third Division, which affirmed the decision of the single reappraising judge.

The Government took an appeal from the judgment of the said Third Division of the United States Customs Court to this court which held that there was no foreign, export or United States value shown and that the proper dutiable value was the cost of production. It was held that there was no proper evidence of the cost of production and the cause was remanded with instructions to dismiss the appeal. See *United States* v. *International Graphite & Electrode Corp.*, 25 C. C. P. A. (Customs) 74, T. D. 49006.

It will be noticed that the appraised value was very much in excess of the entered value, and additional duties were assessed under section 489 of the Tariff Act of 1930.

Appellant petitioned the United States Customs Court for remission of said additional duties, which we interpret to be a petition asking said court to exercise such powers as are granted to it in said section 489, Tariff Act of 1930, and to make an order to the effect that the entry of the merchandise by appellant at a less value than that returned upon final appraisement was "without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise."

In said remission hearing before said court, the importer introduced the testimony of a single witness, Roy K. Brier, and also introduced into the instant record the record in said reappraisement proceeding in this court, Customs Appeal 4051, cited *supra*. Witness Brier, a chemist and chemical engineer, was connected, during the period of said importations, with the International Graphite & Electrode Corporation as manager and assistant, and had formerly been connected with the Exolon Co., located at Blasdell, N. Y., which latter company had an electric furnace at Thorold, Ontario.

It is shown by the testimony in the said reappraisement record that the Speer Carbon Co. of St. Marys, Penn., began the manufacture of carbon rods in accordance with a secret formula; that these rods were sold and shipped to the Exolon Co. in Canada where they were manufactured into graphite electrodes; that nipples therefor were also made at the Canadian plant; that the greater portion of the finished electrodes were sold and shipped to the appellant company which was owned and controlled by the Speer Carbon Co. and the Exolon Co.; and that the International Graphite & Electrode Corporation sold some of such electrodes to various purchasers in the United States. It appears definitely from the record that the said electrode manufacturing enterprise was regarded by all concerned as experimental, that such sales as were made in Canada were made more or less on trial, and that in many instances the merchandise proved unsatisfactory to the purchaser and upon complaint restitution of some kind was made. The sales in the United States were made under similar circumstances.

The incorporated record discloses that the whole venture was a failure and the merchandise proved practically worthless for any purpose.

Said witness Brier testified that when he began to make the entries of the imported merchandise he understood the purpose of the formation of the appellant corporation which was to import and sell said electrodes until the completion of an American plant which took place about October 1930; that as assistant treasurer and manager of the International Graphite & Electrode Corporation it was his duty to take care of the customs entry of the merchandise and that prior to the first entry in 1930 he made inquiry and investigation as to the dutiable value of the electrodes imported from Canada and called upon Mr. Chace, the appraiser, at Niagara Falls and explained to him what was intended to be done and asked him how the electrodes should be entered; that Mr. Chace told him they should be entered on the basis of their cost of production, including raw materials, labor, etc., plus an overhead and plus 10 per centum for profit; that he explained to the appraiser that the merchandise was a new article of commerce and that there was no comparable commercial article existing in the United States or Canada; that he communicated the information he received from Mr. Chace to the Exolon Co. in Canada or New York and advised them to invoice the merchandise accordingly and that the actual cost of production or the estimated cost of production at that time, including 10 per centum profit, was 8.8 cents per pound; that the information he had as to the cost of production was supplied to him by the Canadian Exolon Co. of which Mr. W. A. Harty was president and general manager; that the information must have come from the cost department of the company; that "The figures were put on the papers as they were made out, and it came over to me for signature."

Mr. Harty did not testify at the remission proceeding but did testify in an attempt to establish cost of production in the reappraisement proceeding. In that proceeding he testified that the figure of 8.8 cents was the basis of the prospectus and that it was arrived at in connection with the experimental work conducted by the Exolon Co.; that the experimental work consisted of work in the laboratory, in making a record of the cost or contemplated cost of any component material, and included overhead and "everything that would represent a reasonable basis of cost—on which to go ahead"; that it did not include profit. (It will be remembered that 10 per centum of 8 cents was added for profit at the time of entry.)

In addition to the foregoing facts, Mr. Brier in the remission proceeding testified that in making the said entries he knew what the cost of production was, and was familiar in a general way with production costs because he was working in connection with such costs; that in making said entries at said cost of production figure he did not intend

to defraud the revenues of the United States, and did not withhold any information from the appraiser or any customs officer and withheld no information of any sales. Government counsel asked Brier in cross-examination a number of questions which related to what he did and learned subsequent to the time of entry and with reference to his failure to testify at one of the reappraisement proceedings which questions were objected to by the importer and some of such objections were sustained. This last-stated subject matter is here mentioned because the trial court indicates that it was regarded as a matter of importance in the decision of the instant issue.

The Government introduced the testimony of Thomas G. Duncan, a customs agent at Buffalo, N. Y., who investigated the facts involved in the case at bar after the petition for remission had been filed in 1937. He stated that he visited the plant of the International Graphite & Electrode Co. in Niagara Falls and was told that the records and correspondence had been moved to St. Marys, Penn.; that he went to St. Marys, Penn., and interviewed the assistant treasurer of the corporation and learned that there was no correspondence covering the time when the importations were made; that most of the information was evidently transmitted by telephone; that the company evidenced a willingness to cooperate with him in an investigation. The record shows that he obtained very little information of any kind throwing any light on the actual cost of production during the period of importation; that Mr. Brier had gone from Niagara Falls by the time he arrived and that he did not interview him.

Upon the foregoing testimony and record the United States Customs Court, First Division, with one dissenting opinion, denied the petition and said:

It is perfectly manifest that this witness [Brier], neither at the time he made the entry nor at the time he was testifying, was in a position to testify as to the cost of production of the involved merchandise within the meaning of that term as it is defined in section 402 (f) of the Tariff Act of 1930, and his testimony possesses no probative value in support of this petition.

Even in this proceeding there was not that frankness on the part of either the witness or his counsel that should be present in remission proceedings. This view is manifested by the fact that practically every question asked by Government counsel on cross-examination of the witness as to the market conditions in Canada for this class of merchandise at or about the dates of its shipment was objected to.

We find ourselves in disagreement with the conclusion reached by the trial court. It seems to us that the foregoing statement which involves matters connected with the experimental production and sale of the imported merchandise, and the facts connected with its entry, and the reappraisement proceedings, including the appeal to this court in the reappraisement case, compels the conclusion that the

appellant has met its burden of producing before the trial court satisfactory evidence that the entry of the merchandise at a value lower than its final appraised value was made without any intention of defrauding the revenue of the United States or of concealing or misrepresenting the facts of the case or of deceiving the appraiser as to the value of the merchandise.

The circumstances in the case indicate that while the final appraised value had to stand by reason of the circumstances above recited, it far exceeded the real value of the merchandise, and there is nothing in the record to indicate that the cost of production was greater than the entered value. All of the evidence on the question of cost of production tends to support the entered value rather than any higher value. In this court it was determined that Mr. Brier was right in entering the merchandise on the basis of cost of production. He so entered it at the suggestion of the appraiser after having fully explained the facts. There is nothing in the record to indicate that he should have regarded 8.8 cents per pound as less than the actual cost of production. On the contrary, such evidence as is in the record supports the conclusion that he was justified in relying upon this figure when he made the entries.

As is indicated in the above-quoted portion of the trial court's decision, a lack of frankness on the part of "the witness or his counsel" was found by the trial court, predicated upon the proposition that appellant's counsel objected to certain questions which objections the trial judge sustained. For instance, some of the questions related to the selling price of some of the electrodes in Canada. Objection was made to the testimony sought to be elicited on the ground, among others, that it referred to matters occurring after the date of entry. It obviously related to a question of some kind of value other than cost of production. We must assume, under the circumstances, that the ruling of the court in sustaining the objection was not erroneous and we know of no supporting authority for the conclusion that a witness shows lack of frankness when he is not permitted by the court to answer an improper question. Moreover, although it is a matter of no importance here, we would not conclude that a litigant's attorney shows a lack of frankness by making a proper objection to an improper question.

In certain remission cases we have expressed ourselves as being hesitant in reversing the trial tribunal upon the weight of the evidence, but we have frequently been confronted with cases, like that at bar, where there was little, if any, conflict in the testimony and the decision called for the application of a question of law. In certain cases, which need not be cited here, where we thought the circumstances warranted it, we have not hesitated to reverse the judgment of the

trial court. We think justice and fairness requires that it be done here. The mere fact that the final appraised value was very much in excess of the entered value does not of itself require that additional duties should finally be collected from the importer. It is true that the collector under the statute was required to levy them, but Congress by said section 489 offered remedy for just such cases as this.

In this court appellant raised by assignment of error and in argument a number of other questions involving the jurisdiction of the First Division of the United States Customs Court and other tribunals concerned in the reappraisement proceeding and the remission proceeding. In the course of the argument appellant's counsel, however, waived all questions but the question of the appeal on the merits of remission.

For the reasons hereinbefore stated, we think that the trial court should have entered an order to the effect that appellant's entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise, and its judgment denying said petition is *reversed* and the cause is *remanded* for further proceedings in accordance with the views herein expressed.